# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SIMON FINGER, M.D. | CIVIL ACTION |
| VERSUS | NO: 17-2893 |
| HARRY JACOBSON ET AL. | SECTION: "H"(1) |

## ORDER AND REASONS

Before the Court are a Motion to Dismiss, or Alternatively Compel Dispute Resolution by Defendants Harry Jacobson and MedCare Investment Corporation (Doc. 11), and a Motion to Dismiss, or Alternatively Compel Dispute Resolution by Defendants Cardiovascular Care Group, Inc., Steve Johnson, and Douglas Koppang (Doc. 12). For the following reasons, the Motions are DENIED.

## BACKGROUND

Plaintiff Simon Finger is an orthopedic surgeon who alleges that he was fraudulently mislead by Defendants to sell his private practice and join the Louisiana Heart Hospital (the "Hospital") as an employee. Plaintiff's Complaint alleges that Defendant MedCare Investment Corporation

1

("MedCare") is a private equity firm that held an investment interest in Defendant Cardiovascular Care Group, Inc. ("CCG"). CCG is a healthcare company that indirectly owns the Hospital. Defendant Harry Jacobson is the chairman of MedCare, and Defendants Steve Johnson and Douglas Koppang are executives at CCG. Plaintiff alleges that Jacobson, Johnson, and Koppang made intentional and fraudulent misrepresentations regarding MedCare and CCG's financial situations and commitment to the Hospital in order to induce him to join the Hospital. In reliance on their statements, Plaintiff signed a seven-year contract with an annual salary of $1.3 million plus production bonuses. Plaintiff thereafter "shut down his private practice, divested his interest in [an unrelated] surgical hospital and [] physical therapy clinic, and sold his medical equipment and supplies to the Hospital. On May 1, 2016, he reported to work at the Hospital as an employee."[1]

In late August 2016, Koppang informed Plaintiff that CCG had decided to stop supporting the Hospital and that it would be shut down if it could not find a buyer. Plaintiff's Complaint states that thereafter Jacobson told Plaintiff that MedCare would guarantee his income stream for the life of his contract, however, the documentation promised was never provided. Plaintiff alleges that he sustained damages for his justifiable reliance on the intentional and fraudulent misrepresentations of Jacobson, Johnson, and Koppang.[2] He

---

[1] Doc. 1-2.
[2] In this Order, the Court does not resolve the parties' dispute regarding whether Plaintiff has brought fraud claims or fraudulent inducement claims against Defendants.

alleges that MedCare and CCG are vicariously liable for the fraudulent misrepresentations of their agents.

Defendants have moved for dismissal of these claims on several grounds. First, Jacobson and MedCare allege that Plaintiff has failed to state a claim against them. Second, all Defendants allege that Plaintiff's claims should be dismissed because he failed to join an indispensable party. Finally, all Defendants argue in the alternative that the parties should be compelled to arbitration pursuant to an arbitration provision in Plaintiff's employment agreement with the Hospital. This Court will consider each argument in turn.

## **LEGAL STANDARD**

### A. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[1] A claim is "plausible on its face" when the pleaded facts allow the court to "draw reasonable inference that the defendant is liable for the misconduct alleged."[2] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[3] The court need not, however, accept as true legal conclusions couched as factual allegations.[4] To be legally sufficient, a complaint must establish more than a "sheer possibility" that the

---

[1] Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).

[2] *Id.*

[3] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).

[4] *Iqbal*, 556 U.S. at 678.

3

plaintiff's claims are true.[5] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[6] The court's review is limited to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[3]

### B. Rule 12(b)(7)

Federal Rule of Civil Procedure 12(b)(7) permits dismissal for failure to join an indispensable party under Federal Rule of Civil Procedure 19.[4] It "allows for both the joinder of parties who should be present in order to have a 'fair and complete resolution of the dispute,' and for the dismissal of lawsuits 'that should not proceed in the absence of parties that cannot be joined.'"[5] Rule 19 sets out a two-step inquiry: whether a party should be added under the requirements of Rule 19(a) and whether litigation can properly proceed without the absent party under the requirements of Rule 19(b).[6] A "Rule 12(b)(7) motion will not be granted because of a vague possibility that persons who are not parties may have an interest in the action. In general, dismissal is warranted only when the defect is serious and cannot be cured."[7] The decision whether to dismiss a case for failure to join an indispensable party

---

[5] *Id.*
[6] *Lormand*, 565 F.3d at 255–57.
[3] Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).
[4] HS Res., Inc. v. Wingate, 327 F.3d 432, 438 (5th Cir. 2003).
[5] Dore Energy Corp. v. Prospective Inv. & Trading Co. Ltd., 570 F.3d 219, 230–31 (5th Cir. 2009) (citing *HS Res., Inc.*, 327 F.3d at 438).
[6] August v. Boyd Gaming Corp., 135 Fed. Appx. 731, 732 (5th Cir. June 22, 2005).
[7] CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1359 (3d ed.).

first requires the court, in a highly practical, "fact-based endeavor," to determine whether the party meets the requirements of Federal Rule of Civil Procedure 19(a).[8]

> Under Rule 19(a)(1), the party must be joined if it is subject to process, its joinder does not deprive the Court of subject matter jurisdiction, and if: "(A) in the person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."[9]

The party seeking the joinder bears the initial burden of demonstrating that the person is necessary.[10]

### C. Motion to Compel Arbitration

The question of arbitrability is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., which broadly applies to any written provision in "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction."[11] A two-step analysis governs whether parties should be compelled to arbitrate a dispute.[12] The Court must first determine whether

---

[8] Hood *ex rel.* Mississippi v. City of Memphis, 570 F.3d 625, 628 (5th Cir. 2009).
[9] Indian Harbor Ins. Co. v. KB Lone Star, Inc., No. 11-cv-1846, 2012 WL 1038658, at *1 (S.D. Tex. Mar. 27, 2012) (quoting *Hood*, 570 F.3d at 628).
[10] *Hood*, 570 F.3d at 628.
[11] Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).
[12] JP Morgan Chase & Co. v. Conegie *ex rel.* Lee, 492 F.3d 596, 598 (5th Cir. 2007).

the parties agreed to arbitrate the dispute.[13] This determination involves two separate inquiries: (1) whether there is a valid agreement to arbitrate between the parties, and, if so, (2) whether the dispute in question falls within the scope of that agreement.[14] Both inquiries are generally guided by ordinary principles of state contract law.[15] The strong federal policy favoring arbitration applies "when addressing ambiguities regarding whether a question falls within an arbitration agreement's scope," but it does not apply "when determining whether a valid agreement exists."[16] If the Court finds the parties agreed to arbitrate, it must then proceed to the second step of the analysis and consider whether any federal statute or policy renders the claims non-arbitratable.[17]

## LAW AND ANALYSIS

### A. 12(b)(6) Motion to Dismiss

First, Defendants Jacobson and MedCare allege that Plaintiff Finger has failed to state a claim against them in his Complaint. The allegations of the Complaint against Jacobson state that:

> On January 31, 2016, the night before he signed the contract, Finger got cold feet. He told Koppang that he was reconsidering the deal. Koppang arranged for Jacobson to call Finger on his cell phone. Jacobson told Finger that MedCare had 'extremely deep pockets,' and were 'in this for the long haul.' Finger asked Jacobson whether he MedCare and CCG would definitely be around for the

---

[13] Banc One Acceptance Corp. v. Hill, 367 F.3d 426, 429 (5th Cir. 2004).
[14] Sherer v. Green Tree Servicing LLC, 548 F.3d 379, 381 (5th Cir. 2008).
[15] *See* First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995).
[16] *Sherer*, 548 F.3d at 381.
[17] Primerica Life Ins. Co. v. Brown, 304 F.3d 469, 471 (5th Cir. 2002).

entire seven-year term of his contract. Jacobson laughed and told Finger he had nothing to be concerned about. That statement and Jacobson's statement regarding MedCare's intentions were both intentional misrepresentations intended to induce Dr. Finger to join the Hospital.

In order to succeed on a Louisiana fraud or intentional misrepresentation claim, Plaintiff must show (1) a misrepresentation of a material fact; (2) made with intent to deceive; and (3) causing justifiable reliance with resultant injury.[18] Jacobson argues that the statements detailed in Plaintiff's Complaint do not create a claim for fraud because they are promises or statements as to future events, which are insufficient to constitute fraud. This Court disagrees and finds that Plaintiff has sufficiently plead a fraud claim against Jacobson and MedCare. When read in a light most favorable to Plaintiff, the statements attributed to Jacobson in Plaintiff's Complaint constitute a misrepresentation of MedCare's commitment to the Hospital. Even if these statements are future promises, as Defendants allege, "fraud also may be predicated on promises made with the intention not to perform at the time the promise is made."[19] Plaintiff's Complaint alleges that Jacobson knew that MedCare intended to divest itself of its interest in CCG when he made the statement that it was "in for the long haul." Accordingly, Defendants Jacobson and MedCare's request for dismissal of Plaintiff's claims is denied.

---

[18] Kadlec Med. Ctr. v. Lakeview Anesthesia Assoc., 527 F.3d 412, 418 (5th Cir. 2008).
[19] Automatic Coin Enters., Inc. v. Vend-Tronics, Inc., 433 So. 2d 766, 768 (La. App. 5 Cir.).

7

## B. 12(b)(7) Motion to Dismiss

Next, Defendants argue that Plaintiff's claims should be dismissed for failure to join an indispensable party under Federal Rule of Civil Procedure 19. Defendants contend that the only parties to Plaintiff's employment agreement with the Hospital are LMCHH PCP, LLC ("LMCHH") and Plaintiff. LMCHH is not a party to this action and is a chapter 11 debtor in bankruptcy court. An automatic stay is in place in LMCHH's bankruptcy action.

Defendants contend that LMCHH is an indispensable party to this action because it is a party to the employment agreement that Plaintiff alleges he was fraudulently induced to sign.

> Under Rule 19(a)(1), the party must be joined if it is subject to process, its joinder does not deprive the Court of subject matter jurisdiction, and if: "(A) in the person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."[20]

Defendants do not adequately explain how LMCHH is a necessary party under Rule 19. Instead, they merely contend that because it is a party to the employment agreement, which they allege is at issue here, it is a necessary party. Defendants cite to cases stating that parties to a contract are necessary

---

[20] *Indian Harbor Ins. Co.*, 2012 WL 1038658, at *1 (quoting *Hood*, 570 F.3d at 628).

parties in contract actions.[21] Plaintiff has not, however, brought a contract action. Plaintiff's claims arise in tort and are only superficially related to the employment agreement. Plaintiff's Complaint does not seek to interpret, enforce, or rescind the employment agreement. At its core, this case is not about the provisions of the employment agreement entered into between Plaintiff and the Hospital. Rather, this case focuses solely on the conditions under which the contract came into existence. That is, the representations made by Jacobson, Johnson, and Koppang on behalf of MedCare and CCG relating to the solvency of MedCare and CCG and their commitment to the success of the Hospital. Plaintiff merely seeks damages for Defendants' fraud. Defendants have not shown how complete relief cannot be conferred in LMCHH's absence or how LMCHH has an interest relating to this action. Defendants therefore have not carried their burden to show that LMCHH is a necessary party. Accordingly, Defendants' request for dismissal on these grounds is denied.

**C. Motion to Compel Arbitration**

Finally, Defendants allege that the parties should be required to resolve this dispute in arbitration pursuant to the arbitration clause of the employment agreement. The employment agreement states that, "The Parties agree that any dispute arising in connection with, or relating to, this Agreement . . . shall be subject to resolution through" mediation or

---

[21] *See* Harris Tr. & Sav. Bank v. Energy Assets Int'l Corp., 124 F.R.D. 115, 117 (E.D. La. 1989) ("[T]here is a general rule that where rights sued upon arise form a contract, all parties to it must be joined.").

arbitration.[22] Defendants, however, overlook the significant fact that they are not "Parties" to the employment agreement—only Plaintiff and LMCHH are "Parties" to the agreement. Defendants argue instead that the arbitration provision of the employment agreement should be enforced upon the parties to this action because Plaintiff has claimed that he was fraudulently induced into entering into the employment agreement.

Defendants cite to cases standing for the proposition that an arbitration clause such as the one at issue here is broad enough to encompass a claim of fraudulent inducement to the contract.[23] These cases do not, however, apply such a rule to non-signatories to the contract. Defendants have not provided this Court with any case where arbitration was imposed pursuant to an agreement to which the party accused of fraudulent inducement was not a signatory.

The Fifth Circuit has espoused two instances when courts should apply equitable estoppel to allow a non-signatory to a contract with an arbitration clause to compel arbitration.

> First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted when the

---

[22] Doc. 11-1, at p. 6.
[23] *See* Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 406 (1967); Mesa Operating Ltd. P'ship v. La. Intrastate Gas Corp., 797 F.2d 238, 244 (5th Cir. 1986).

signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.[24]

Here, neither narrow instance applies. First, Plaintiff's claims are tort claims that do not arise out of or rely on the terms of the employment agreement. Second, Plaintiff does not make any allegations regarding the misconduct of LMCHH, the agreement's signatory. Accordingly, ordering the parties to this action to arbitration pursuant to the arbitration clause of the employment agreement would be inappropriate. Defendants' request is denied.

## **CONCLUSION**

For the foregoing reasons, the Motions are DENIED.

New Orleans, Louisiana this 2nd day of November, 2017.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[24] Grigson v. Creative Artists Agency L.L.C., 210 F.3d 524, 527 (5th Cir. 2000).