UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SIMON FINGER, M.D. | : |
| | : |
| VERSUS | : CIVIL ACTION |
| | : |
| HARRY R. JACOBSON, M.D., DOUGLAS L. KOPPANG, JR., STEVEN T. JOHNSON, MEDCARE INVESTMENT CORPORATION, AND CARDIOVASCULAR CARE GROUP, INC. | : NO. 17-CV-02893-GGG-DMD |
| | : SECTION: "T"(3) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO STRIKE AND MOTION IN LIMINE**

Defendants, Harry R. Jacobson, M.D., Douglas L. Koppang, Jr., Steven T. Johnson, MedCare Investment Fund V, L.P. (incorrectly named as MedCare Investment Corporation), and Cardiovascular Care Group, Inc. (collectively "**Defendant**s"), respectfully file this memorandum in support of Defendants' Motion to Strike and Motion in Limine.  Trial is currently scheduled to commence on February 4, 2020.  In advance of trial, Defendants present the Court with the following straight-forward issues:

(i) **Non-Pecuniary Damages.**  Federal Rule 26(a)(i)(A)(iii) provides that a party must provide Initial Disclosures including a computation of each category of damages claimed by the disclosing party, and the disclosing party must make available for discovery all documents or other evidentiary material on which each computation is based, including materials bearing on the nature and extent of injuries suffered.  Over one month after the close of discovery, Dr. Finger amended his Initial Disclosures to include an entirely new category of damages, certain "nonpecuniary damages," which he seeks to recover at trial.  This late amendment to the Initial Disclosures violates both (1) the Court's Scheduling Order, which ordered the exchange of initial disclosures by December 8, 2018 and ordered discovery to

2240869v.2

be closed by May 6, 2019, and (2) Rule 26(a)(i)(A)(iii), which requires Dr. Finger to allow Defendants to discover evidence corroborating these claimed damages.  Accordingly, the inclusion of non-pecuniary damages on Dr. Finger's Amended Initial Disclosures must be stricken, and evidence supporting these alleged damages must be suppressed at trial.

Additionally and/or in the alternative, under Louisiana law, non-pecuniary damages are available to a litigant seeking recovery for breach of contract when the contract at issue was intended to gratify a non-pecuniary interest. *See* La. C.C. art. 1998.  The plain language of La. C.C. art. 1998 and the jurisprudence are clear: non-pecuniary damages are not available to plaintiffs seeking recovery for damages arising in tort.  Dr. Finger has repeatedly stated that his claims against Defendants arise in tort – not contract.  In fact, there is no contract between Plaintiff and Defendants (or any single Defendant). Accordingly, Dr. Finger's recent (and belated) statement in his Amended Initial Disclosures that he seeks certain unspecified "non-pecuniary" damages must be stricken, and any evidence in support thereof should be excluded.

(ii) **Expert Witnesses.**  Federal Rule 26(a)(2) requires that a party identify any expert witnesses by the court-appointed deadline, and that all such experts must complete a thorough expert report.  The Court's Scheduling Order provides that Plaintiff's expert(s) in this case must provide written reports "setting forth all matters about which they will testify and the basis therefore" by July 31, 2018.  Nearly a year after the deadline to file his expert report(s), Dr. Finger filed a Witness and Exhibit Lists identifying multiple so-called "experts" who had never been identified in discovery and who did not submit expert reports in this proceeding.  Dr. Finger's belated naming of these experts and failure to provide expert reports violates both Federal Rule 26 and the Court's Scheduling Order.

      Accordingly, the names of these experts (Mark Bohnet, Don Barbo, Steve Diagostino and Dr. Brian Galofaro) should be stricken from Dr. Finger's Witness and Exhibit Lists, and the testimony of these expert witnesses must be excluded at trial.

**(iii)** **Belated Fact Witness.** The Federal Rules require a party, at the outset of litigation, to disclose the name of anyone having discoverable information. If a party later learns of any additional witnesses, he must promptly notify all other parties in writing or supplement his witness disclosures. To the extent a litigant has also requested witness identities in an interrogatory, Rule 33 requires the responding party to respond "fully" and under oath and to supplement these responses if he later learns of additional witnesses. Dr. Finger has named a new witness, Dr. Brian Galofaro, on his Witness and Exhibit Lists. Dr. Galofaro was not disclosed in response to Defendants' discovery requests, and the naming of Dr. Galofaro as a witness took place after the discovery cut off and after the deadline to provide his Witness and Exhibit List. The failure of Dr. Finger to include D. Galofaro in his discovery responses prejudices Defendants such that, under Rule 37, he must not be allowed to testify at trial, and his name must be stricken from Dr. Finger's Witness and Exhibit Lists.

## I. BACKGROUND

Dr. Finger has repeatedly flouted the federal rules and this Court's scheduling order as it pertains to the disclosure of fact witnesses, expert witnesses, computation of damages and theories of recovery. The facts giving rise to Defendants' Motion to Strike and Motion in Limine are as follows:

Dr. Finger belatedly submitted his Rule 26 initial disclosures on December 20, 2017,[1] specifically naming five witnesses: (i) plaintiff, Simon Finger, (ii) defendant, Harry Jacobson, M.D., (iii) defendant, Douglas Koppang, Jr., (iv) defendant, Steven Johnson, and (iv) Warren Beck.[2] With respect to the Rule 26 provision requiring a computation of damages claimed, Dr. Finger claimed economic damages "measured by the amount that he could have made in private practice had he not sold his practice and signed the employment contract with the Hospital, less any mitigation of those damages resulting from compensation actually received by him from other sources during that time."[3] Dr. Finger further added that proof of these economic damages "will require the use of expert CPA testimony."[4]

On January 23, 2018, Defendants issued written discovery to Dr. Finger requesting, *inter alia*, the identity of any experts and any persons who may have knowledge of the facts in the case:

**INTERROGATORY NO. 3**

Please identify any Person who may have knowledge of facts alleged or any issues raised in your Complaint or facts relevant to any of your allegations therein; in doing so, please indicate the following:

(i)   their name, address, telephone number, and relationship to the lawsuit, if any; and
(ii)  the information such Persons may have and the basis for their knowledge.

In his response, Dr. Finger named only himself, Harry Jacobson, Doug Koppang, Steven Johnson,

---

[1] **Exhibit A** – Plaintiff's Initial Disclosures dated December 20, 2017. Per the scheduling order, these disclosures were due on December 8, 2017. R. Doc. 31.

[2] Dr. Finger also named a representative for defendants, MedCare and CCG, and further identified "[a]ny individual identified by any other party," "[a]ll witnesses disclosed by Defendants in their Rule 26(a)(1) initial disclosures, "[a]ny person identified as potential witness in depositions," "[a]ny person necessary for impeachment purposes, and "[a]ny individuals having discoverable information whose identities are not known but may become known in the course of discovery."

[3] Exhibit A.

[4] Exhibit A.

and James Leininger.[5]  Dr. Finger was also asked to identify any person whom he expected to call as an expert witness at trial in Defendants' Interrogatory No. 4:

**INTERROGATORY NO. 4**

For each person whom you expect to call as an expert witness at trial, state the subject matter on which the expert is expected to testify, state the substance of the findings and opinions to which the expert is expected to testify and a summary of the grounds of each opinion, and attach to your answers any written report made by the expert concerning these findings and opinions.

In response to Interrogatory No. 4's request for the identities of expert witnesses, Dr. Finger named Wilson A. LaGraize, Jr. as his expert CPA.[6]

In accordance with the Court's Order,[7] Dr. Finger submitted the expert report of Mr. LaGraize on July 31, 2018.  On September 20, 2018, the Court reset the remaining pre-trial deadlines and trial date as follows:

> Counsel for the parties shall file in the record and serve upon their opponents a list of all witnesses who may or will be called to testify at trial and all exhibits which may or will be used at trial no later than **JANUARY 4, 2019.**
>
> The Court will not permit any witness, expert or fact, to testify or any exhibits to be used unless there has been compliance with this Order as it pertains to the witness and/or exhibits, without an order to do so issued on motion for good cause.
>
> Depositions for trial use shall be taken and all discovery shall be completed no later than **FEBRUARY 4, 2019.**  This case does not involve extensive documentary evidence, depositions or other discovery.  No special discovery limitations beyond those established in the Federal Rules, Local Rules of this Court, or the Plan are established.[8]

On January 4, 2019, Dr. Finger filed his Witness and Exhibit List in which he named five

---

[5] **Exhibit B**: Dr. Finger's Discovery Responses to Interrogatory Nos. 3-4.  Notably, "James Leininger" does not appear on any subsequent witness or exhibit list.

[6] *See* Exhibit B.

[7] Order Granting Motion for Extension of Deadlines, R. Doc. 36.

[8] Scheduling Order, R. Doc. 50.

entirely new witnesses, none of whom had been identified in his Initial Disclosures or discovery responses:[9] (1) James Gosey, (2) James Butler, (3) Mark Bohnet, (4) Genie Suarez, and (5) Conrad Meyer.[10] Though the list does not state whether these witnesses serve as fact or expert witnesses, they were presumed to be fact witnesses.

Soon thereafter, Dr. Finger filed a Motion to Continue Trial and Pre-Trial Deadlines, which was granted by the Court. The relevant deadlines were amended as follows:

> Counsel for the parties shall file in the record and serve upon their opponents a list of all witnesses who may or will be called to testify at trial and all exhibits which may or will be used a trial no later than **APRIL 5, 2019.**
>
> The Court will not permit any witness, expert or fact, to testify or any exhibits to be used unless there has been compliance with this Order as it pertains to the witness and/or exhibits, without an order to do so issued on motion for good cause.
>
> Depositions for trial use shall be taken and all discovery shall be completed no later than **MAY 6, 2019.** This case does not involve extensive documentary evidence, depositions or other discovery. No special discovery limitations beyond those established in the Federal Rules, Local Rules of this Court, or the Plan are established.[11]

On April 5, 2019, Dr. Finger filed his second Witness and Exhibit list, which now identified four additional witnesses that had not been identified in Dr. Finger's Initial Disclosures or discovery responses: (6) Peter Mayer (Peter A. Mayer Advertising) (fact witness), (7) Vincent

---

[9] R. Doc. 56. Dr. Finger also identified undisclosed representatives for several entities and other non-specific language. For example, Dr. Finger identified "One or more members of the board of LHH," "One or more local physicians recruited by MedCare/CCG during the months prior to the LHH Bankruptcy," etc. These individuals would have been known or should have been known to Dr. Finger since the inception of the case.

[10] Mr. Meyer was one of Dr. Finger's attorneys during his employment negotiations with the Louisiana Heart Hospital. Defendants have sought to obtain discovery from Dr. Finger related to his communications with Mr. Meyer but no such communications have been produced. In fact, Dr. Finger has asserted a privilege as to these communications and has failed to provide a privilege log or documents related to Mr. Meyer. This issue was addressed during Defendants' Motion to Compel and an order compelling the production of this information was granted. To date, however, Dr. Finger has failed to comply with this discovery order and has not produced any communications related to Mr. Meyer.

[11] R. Doc. 70.

Cheshire (Manager, Cross Gates Physical Therapy) (fact witness); (8) Don Barbo (VMG Health Dallas) (fact and expert witness), and (9) Steve Diagostino (Somerset CPAs and Advisors).[12] Importantly, the disclosure of Don Barbo and Steve Diagostino as potential expert witnesses came nearly <u>two years</u> after this Court's deadline for producing expert reports.

Discovery closed soon thereafter on May 6, 2019.[13] On June 14, 2019, over two months after the due date for the parties' Witness and Exhibit Lists and a month after the close of discovery, Dr. Finger filed an "Amended Witness and Exhibit List" identifying yet another previously undisclosed witness: (10) Dr. Brian Galofaro.[14] It is unclear whether Dr. Galofaro is to be a fact witness or expert witness.

Four days later, on June 18, 2019, Dr. Finger filed "Amended Initial Disclosures."[15] These Amended Initial Disclosures – submitted 1.5 months after the close of discovery and 18 months after Initial Disclosures were due – identified the new witnesses included in the "Amended Witness and Exhibit List" and, for the first time ever, asserted a claim against Defendants for non-economic and non-pecuniary damages as follows:

> Plaintiff's non-economic or nonpecuniary general damages, prayed for in his original petition as "general and equitable relief", include the value to Dr. Finger of working in a best-in-class Hospital and physical facility, the value of being an employee of a medical center of excellence, and the value to Dr. Finger of being a respected member of the medical staff at LHH.  **These noneconomic general damages, because of their general nature, cannot be computed with specificity but rather must be determined by the factfinder.** [Emphasis added].

---

[12] R. Doc. 74.  Notably, Dr. Finger does not specify whether Steve Diagostino will serve as a fact or expert witness. Given his qualifications, it is assumed that Dr. Finger intends to present him as an expert witness.
[13] R. Doc. 70.
[14] R. Doc. 95.
[15] **Exhibit C**: Amended Initial Disclosures.

7

## II. LAW & ARGUMENT

### A. Dr. Finger's claim for non-pecuniary damages should be stricken.

Federal Rule 26(a)(1)(A)(ii) provides as follows:

> **(a) Required Disclosures.**
> **(1)** *Initial Disclosure.*
> **(A)** *In General.* Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:
> ….
> **(iii)** a computation of each category of damages claimed by the disclosing party-- who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered….

In his first Initial Disclosures, Dr. Finger stated that his damages were economic in nature and that an expert would be required to calculate his damages with specificity. Then, on June 18, 2019, over eighteen (18) months after his Initial Disclosures were due and 1.5 months after the close of discovery, Dr. Finger filed "Amended Initial Disclosures" asserting entitlement to an undisclosed and incalculable amount of non-economic and nonpecuniary damages. As an initial matter, Dr. Finger's Amended Initial Disclosures violate the Court's scheduling order, which provides that "all discovery shall be completed no later than MAY 6, 2019."[16] More importantly, due to Dr. Finger's delay in disclosing this new theory of recovery, Defendants have not been afforded the opportunity to issue discovery requests under Rule 34 or otherwise depose Dr. Finger about the nature of these alleged damages, as required by Rule 26(a)(i)(A)(iii). Dr. Finger's Amended Initial Disclosures violate both the federal rules and an Order of this Court, and they should be stricken accordingly.

---

[16] R. Doc. 70.

8

Additionally, Dr. Finger describes these damages as speculative, explaining that "[t]hese noneconomic general damages, because of their general nature, cannot be computed with specificity but rather must be determined by the factfinder."[17] Dr. Finger draws his support for these alleged noneconomic and non-pecuniary damages from Louisiana Civil Code article 1998. Entitled "Damages for nonpecuniary loss," La. C.C. art. 1998 provides:

> Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.
>
> Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee.

As the plain language of La. C.C. art. 1998 provides above, a claim for non-pecuniary damages under article 1998 requires a contract. As the Louisiana Third Circuit Court of Appeal explained in *Gray v. McCormick*:[18]

> La.Civ. Code art. 1998 provides that nonpecuniary damages can be awarded where a principal object of a contract is intellectual enjoyment. In the present case, since we find that the Grays failed to prove that a contract existed with McCormicks, it is clear that nonpecuniary damages cannot be awarded. **Simply stated, without a contract, the award of nonpecuniary damages under Article 1998 does not come into play.** Accordingly, we must reverse the trial court's award of nonpecuniary damages.

Similarly here, there is no contract between Dr. Finger and any Defendant. As Dr. Finger repeatedly told the Court in opposing Defendants' Rule 12 motion in this case, "[a]t the risk of being repetitive, this is a tort action, not a contract action. Dr. Finger's petition doesn't cite a single provision of the Contract. Dr. Finger is not attempting to enforce the Contract, nor is he

---

[17] **Exhibit C** - Amended Initial Disclosures.
[18] *Gray v. McCormick*, 94-1282 (La. App. 3 Cir. 10/18/95), 663 So.2d 480, 48 (emphasis added).

9

attempting to rescind or evade the Contract."[19] In the absence of a contract, and taking Dr. Finger at his word that "[h]e is not concerned about the Contract at all,"[20] Dr. Finger's baseless claim for non-pecuniary damages under La. C.C. art. 1998 should be stricken, and all testimony and evidence in support of this claim should be excluded from trial.

### B. Dr. Finger's new Expert Witnesses must be stricken from his Witness and Exhibit Lists and prevented from testifying at trial.

Rule 26(a)(2) expressly requires that a party identify any expert witnesses by the court-appointed deadline. Moreover, Rule 26(a)(2) requires that the witness provide a complete and thorough "expert report."[21] Originally, and notwithstanding Dr. Finger's discovery obligations, Dr. Finger was required to provide written reports of experts "setting forth all matters about which they will testify and the basis … no event later than June 15, 2018."[22] Dr. Finger was subsequently provided an extension of his expert report deadline until July 31, 2018.[23] The Court's Scheduling Order provides the following regarding compliance with this deadline:

> The Court will not permit any witness, expert or fact, to testify or any exhibits to be used unless there has been compliance with this Order as it pertains to the witnesses and/or exhibits, without an order to do so issued on motion for good cause shown.[24]

On July 31, 2018, Dr. Finger submitted the expert report of Wilson LaGraize – the only expert who was (and has ever been) identified by Dr. Finger in response to Defendants'

---

[19] R. Doc. 14, p. 10.
[20] R. Doc. 14, p. 11.
[21] *See* FED. R. CIV. PROC. 26(a)(2)(B) ("[T]his disclosure must be accompanied by a written report—prepared and signed by the witness . . . . The report must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them. . . .").
[22] R. Doc. 31.
[23] *See* R. Docs. 35 and 36. Dr. Finger was provided an extension of his originally required deadline.
[24] R. Doc. 31.

10

Interrogatory No. 4.[25] Eight (8) months later, on April 5, 2019, Dr. Finger identified new potential expert witnesses – Don Barbo and Mark Bohnet – for the first time in his second Witness and Exhibit List.[26] These individuals were not (and have never been) identified by Dr. Finger in response to Defendants' discovery requests and these purported "experts" have not filed an expert report as required by Rule 26 and the Court ordered deadlines. In fact, Defendants were repeatedly told that Mark Bohnet did not have any involvement in this case – factual or otherwise.[27]

As a result of Dr. Finger's failure to comply with Rule 26(a)(2), Rule 33, and/or the Court's order that required these experts to be identified and a report submitted no later than July 31, 2018, Mark Bohnet and Don Barbo should be stricken as expert witnesses and their testimony excluded at trial. In addition, to the extent any other witness identified by Dr. Finger is later claimed to be an expert, namely Steve Diagostino or Dr. Brian Galofaro, Defendants request that these witnesses also be stricken and their expert testimony and opinions excluded at trial.

### C. Dr. Finger's previously undisclosed Fact Witness, Dr. Galofaro, must be stricken from his Witness and Exhibit Lists and his Amended Initial Disclosures, and Dr. Galofaro's testimony must be excluded at trial.

Several rules impose duties on a party to disclose the identity and opinions of witnesses. To start, Rule 26(a)(1) requires a party, at the outset of litigation, to disclose the name of anyone having discoverable information.[28] If a party later learns of any additional witnesses, he must

---

[25] Interrogatory No. 4: "For each person whom you expect to call as an expert witness at trial, state the subject matter on which the expert is expected to testify, state the substance of the findings and opinions to which the expert is expected to testify and a summary of the grounds of each opinion, and attach to your answers any written report made by the expert concerning these findings and opinions."

[26] R. Doc. 74, p. 2.

[27] This issue was addressed in Defendants' Motion to Compel and correspondence in support thereof was attached to the Motion to Compel.

[28] *See* FED. R. CIV. PROC. 26(a)(1)(A) ("[A] party must, without awaiting a discovery request, provide to the other parties: (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses.").

11

promptly notify all other parties in writing or supplement his witness disclosures.[29] To the extent a litigant has also requested witness identities in an interrogatory, Rule 33 requires the responding party to respond "fully" and under oath.[30] As set forth in Rule 33, the responding party is obligated to supplement his responses if he later learns of any additional witnesses.[31] Rule 37(c) further provides in part:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), **the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless**.[32]

Dr. Finger belatedly filed an "Amended Witness List" on June 14, 2019 naming Dr. Brian Galofaro as a witness. This "Amended Witness List" was filed over a month after the close of discovery and two months after the deadline for naming witnesses. Though Dr. Finger later filed "Amended Initial Disclosures" naming him as a witness,[33] the filing of these Amended Initial Disclosures took place after the close of discovery. Accordingly, the addition of Dr. Brian Galofaro as a potential fact witness stands in violation of Rules 26, 33 and 37. Dr. Galofaro should be stricken from Dr. Finger's Witness and Exhibit Lists and his testimony excluded at trial.

---

[29] *See* FED. R. CIV. PROC. 26(e)(1) ("A party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect.").

[30] *See* FED. R. CIV. PROC. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.").

[31] *See* FED. R. CIV. PROC. 26(e)(1) ("A party who has . . . responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect.").

[32] Fed. R. Civ. P. 37(c)(1) (emphasis added).

[33] Plaintiff has not identified whether Dr. Brian Galofaro is a fact witness, an expert witness, or some combination thereof.

**III.   CONCLUSION.**

Defendants respectfully request that the Court grant this Motion to Strike and Motion in Limine and order as follows:

1. That Dr. Finger's Amended Initial Disclosures asserting entitlement to "non-pecuniary damages" be stricken and all evidence in support thereof be suppressed at trial;

2. That Dr. Finger's disclosure of Mark Bohnet, Don Barbo, Steve Diagostino and Dr. Brian Galofaro as expert witnesses be stricken from Dr. Finger's Witness and Exhibit Lists and all testimony and/or opinions of these purported experts be excluded at trial;

3. That Dr. Finger's naming of Dr. Brian Galofaro as a fact witness be stricken from Dr. Finger's Witness and Exhibit Lists and his testimony be suppressed at trial.

> Respectfully submitted,
>
> TAYLOR, PORTER, BROOKS & PHILLIPS L.L.P.
>
> By**:/s/ *Jonathan A. Moore*_____**
> Brett P. Furr (#17572)
> Thomas R. Peak (#14300)
> Jonathan A. Moore (#34686)
> 450 Laurel Street, 8th Floor (70801)
> P.O. Box 2471
> Baton Rouge, LA 70821
> Phone: (225) 387-3221
> Fax: (225) 346-8049
> Brett.furr@taylorporter.com
> Tom.peak@taylorporter.com
> Jonathan.moore@taylorporter.com
> ***Counsel for Defendants***

2240869v.2

## CERTIFICATE

The undersigned hereby certifies that on this 23rd of December, 2019, a true and correct copy of the aforementioned motion was filed electronically with the Clerk of Court using the CM/ECF filing system. Notice of this filing will be sent by operation of the court's electronic filing system to all counsel of record.

                                                */s/ Jonathan A. Moore*
                                                Jonathan A. Moore