UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SIMON FINGER, M.D. | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | NO.: 17-cv-02893-GGG-DMD |
| HARRY R. JACOBSON, M.D., DOUGLAS L. | ) | |
| KOPPANG, JR., STEVEN T. JOHNSON, | ) | SECTION: "T" (3) |
| MEDCARE INVESTMENT CORPORATION, | ) | |
| AND CARDIOVASCULAR CARE GROUP, INC. | ) | |
| | ) | |

## PROPOSED PRE-TRIAL ORDER

**Date of Pre-Trial Conference**

1.  Date of the pre-trial conference: January 16, 2020, at 1:15 p.m.

**Appearance of Counsel**

2.  Appearance of counsel and the party(s) represented:

Joseph M. Bruno (Bar No. 3604)
Daniel A. Meyer (Bar No. 33278)
BRUNO & BRUNO, L.L.P.
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 581-1493
*Counsel for Plaintiff Simon Finger, M.D.*

Brett P. Furr (Bar No. 17572)
Jonathan A. Moore (Bar No. 34686)
TAYLOR, PORTER, BROOKS & PHILLIPS, L.L.P.
450 Laurel Street, 8th Floor
P.O. Box 2471
Baton Rouge, Louisiana 70821
Phone: (225) 387-3221
Fax: (225) 346-8049
***Counsel for Defendants, Harry R. Jacobson, Douglas L.
Koppang, Jr., Steven T. Johnson, Cardiovascular Care
Group, Inc. and MedCare Investment Corporation***

**Description of the Parties**

      3.  Description of the parties.

A.  Simon Finger, M.D.: Dr. Finger is an individual person who worked as an employed physician at the Louisiana Heart Hospital in Lacombe, Louisiana.

B.  Harry R. Jacobson, M.D.: Jacobson is an individual person made defendant in this suit in his individual capacity. At all times relevant to claims made by Dr. Finger, Jacobson was the Chairman of Cardiovascular Care Group, Inc.

C.  Douglas L. Koppang, Jr.: Koppang is an individual person made defendant in this suit in his individual capacity. At all times relevant to the claims made by Dr. Finger, Koppang was the Senior Vice President of Business Development at Cardiovascular Care Group, Inc.; Vice-President, Treasurer and Secretary of Louisiana Medical Center and Heart Hospital, LLC; and Vice President, Treasurer and Secretary of LMCHH PCP, LLC.

D.  Steven T. Johnson: Johnson is an individual person made defendant in this suit in his individual capacity. At all times relevant to the claims herein, Johnson was the Chief Operating Officer of Cardiovascular Care Group, Inc. and a member of the Board of Directors of Louisiana Medical Center and Heart Hospital, LLC.

E.  MedCare Investment Corporation: Is a Texas Corporation. There is disagreement between the parties as to whether MedCare Investment Corporation has any legal, financial or corporate connection to Cardiovascular Care Group, Inc. and/or LHH; whether MedCare Investment Corporation had any involvement with the allegations giving rise to this suit; and whether the proper party defendant should have been MedCare Investment Fund V, L.P.

F.  Cardiovascular Care Group, Inc. ("CCG"): CCG is a Delaware corporation.

**Jurisdictional Statement**

      4.  Jurisdictional Statement: This matter was removed to Federal Court by the defendants on the basis of diversity jurisdiction, 28 U.S.C. §1332. The parties have made reasonable efforts to ascertain that the Court has jurisdiction.

Dr. Finger has asserted a claim for non-pecuniary damages pursuant to La. C.C. art. 1998. Defendants have filed a Motion in Limine and Motion to Strike to Suppress these Non-Pecuniary Damage claims. To the extent Dr. Finger continues to assert a claim for non-pecuniary damages based on his employment contract with LHH, Defendants contend that the Bankruptcy Court for the Eastern District of Louisiana maintains jurisdiction to address any such employment related claims founded in the employment agreement with the debtor, LHH. See E.D. La. Bankr. Case No. 17-10353 (jointly administered), R. Docs. 470 and 468, 484-485 (detailing the Amended Joint Chapter 11 Plan of Liquidation and Disclosure Statement and setting forth the Bankruptcy Court's retaining jurisdiction to address any such employee claims).

**Motions Currently Pending**

     5.  List and description of motions currently pending.

o  Plaintiff's Motion in Limine to Exclude Expert Witnesses, Doc. 83.

o  Defendants' Motion in Limine to Strike and Suppress Certain Damage Claims and Expert Witnesses and Fact Witnesses, Doc. 104.

**Summary of Material Facts**

     6.  Brief summary of material facts claimed by:

     A.  <u>Plaintiff Simon Finger's summary of material facts:</u>

In 2015, Dr. Finger was an orthopedic surgeon in a profitable private practice. In late 2015, Dr. Finger was heavily recruited by Steven Johnson and Douglas Koppang, on behalf of their employer, CCG, to become an employee of Louisiana Heart Hospital (LHH). Dr. Finger told Koppang and Johnson the only reason he would leave his practice was for long-term stability. As negotiations progressed between CCG and Dr. Finger, Dr. Finger heard rumors that LHH was not profitable. On November 10, 2015, Dr. Finger met with Koppang and Johnson, who assured him LHH lost less money every year, that there was a convincing trend line toward profitability, and LHH was almost breaking even at that time. In December 2015, Johnson and Koppang shared with Dr. Finger information that CCG owned 95% of LHH, that MedCare owned 90% of CCG, and MedCare's backer was Dr. Jim Leininger, a billionaire and the 408th richest person in the United States.

In mid-January 2016, Koppang, Johnson, and Dr. Finger met at LHH where Koppang shared with Dr. Finger a positive trend line for losses for the LHH "hospital entity", breaking out and excluding the "physician group" which was still losing more money. Dr. Finger was concerned whether MedCare would support LHH during the full term of his contract, and was told by Koppang that MedCare and CCG had "never walked away from a deal." told multiple times by

Koppang and Jacobson "you have nothing to worry about" with regard to concerns about MedCare's commitment to funding CCG and LHH. On January 31, 2015—the day before Dr. Finger was to sign his employment contract with LHH—he got cold feet. Dr. Harry Jacobson, the Chairman of MedCare, contacted Dr. Finger by phone and told him MedCare had extremely deep pockets and were in business with LHH for the long haul.  In reliance on representations made by Koppang, Johnson, and Jacobson, Dr. Finger signed his contract on February 1, 2016, and commenced work for LHH in May 2016.

By July 2016, CCG's entire staff was either terminated or in the process of transitioning out of their employment.  No later than September 15, 2016, MedCare hired SOLIC, an advisory firm, to transition them out of ownership of LHH, and in October 2016, LHH hired Alston & Bird as their bankruptcy counsel.  LHH filed for bankruptcy on January 30, 2017.

During the time he was being aggressively recruited to work for LHH, CCG, MedCare, and their employees Dr. Jacobson, Koppang, and Johnson new that LHH had never been profitable for over four years since they purchased the hospital (for $1.00, with an assumption of debt), that LHH's trend lines were negative, suggesting it would never be profitable, and that MedCare has lost over $100 million invested in LHH at that time. Further, the Defendants knew that CCG had become expendable *during* 2015, because MedCare had sold their only other hospital under management, Bakersfield Heart Hospital, rather than restructure its debt, and as a result the employees of CCG were going to be terminated or phased out during 2016.  By January 2016, Koppang and Johnson knew that Medcare did not want to commit any cash to LHH in 2016, CCG was going to be downsized out of existence, and LHH had not hit its financial targets for 2015, and Medcare had informed them if LHH was not profitable, it would not allocate cash in 2016. The Defendants also misled Dr. Finger regarding their intent to sell LHH.  Evidence shows

MedCare intended to sell LHH at their earliest opportunity to recoup some of its investment, and acquiring Dr. Finger's practice was a significant step to make LHH's financial picture appear rosier for potential buyers.

Had Dr. Finger known about any of the foregoing conditions of MedCare, CCG, and LHH, he would not have left his private practice.  As a result of signing with LHH, and their subsequent bankruptcy, Dr. Finger lost $1,555,980.00 in direct-impact financial losses, and lost $1,000,000.00 in non-economic losses, by virtue of being unable to work for a center of excellence, which was a driving influence for Dr. Finger to work for LHH.

B.  Defendants' summary of material facts:

Plaintiff, Simon Finger ("*Finger*"), alleges that Koppang, Johnson, and Jacobson made intentional and fraudulent misrepresentations in recruiting Finger to become an employed physician at the Louisiana Heart Hospital ("LHH").  The alleged statements for which CCG is alleged to be vicariously liable include a statement that the Hospital was "on the right trajectory," that the Hospital "intended to add an imaging and surgery center" and that "these guys … never walked away from a deal."  As to Jacobson, Finger claims that Jacobson's statement that MedCare had "extremely deep pockets" and that MedCare was "in this for the long haul" were fraudulent statements for which MedCare should be held vicariously liable.  Dr. Finger alleges that these statements are fraudulent and/or intentional misrepresentations.   Defendants contend that statements concerning future events do not give rise to liability as matter of law.  At all times relevant to the recruitment of Dr. Finger, these statements were true and, further, Jacobson, Koppang, or Jacobson believed these statements to Dr. Finger to be true.  The truth of this statement is demonstrated by the following:  CCG continued to pump millions and millions into LHH during Dr. Finger's recruitment and after Finger entering into his employment agreement with LHH.  This is confirmed by the deposition testimony and will be confirmed at trial.  Here,

5

Johnson, Koppang and Jacobson believed their statements to be true at the time the statements were made, and there is no evidence that those statements were false at the time the statements were made.

During Dr. Finger's recruitment and the negotiations, he was provided financial information of the Heart Hospital, the financial position of the Heart Hospital was discussed, and he was provided any information that he requested. Dr. Finger knew that the Heart Hospital was losing money and was unprofitable. Furthermore, Dr. Finger was represented by attorneys and accountants throughout his recruitment and the negotiation of his financial demands. In the end, all of his demands were met. On or about February 1, 2016, Dr. Finger signed an employment agreement with LHH. None of the Defendants are a party to the employment agreement and there is no contract or agreement that exists between Finger and any Defendant.

Despite the millions of dollars provided to LHH by MedCare Investment Fund V, L.P. (not a defendant in this suit) through CCG, LHH nevertheless failed. Efforts to sell the hospital as a going concern, and thereby allow for the retention of Dr. Finger, were abruptly and unexpectedly terminated by the prospective buyer, Louisiana Children's Medical Center. As a result, on January 30, 2017, LHH filed Chapter 11 bankruptcy. The Hospital was subsequently closed and its assets were liquidated. CCG lost approximately $175 million. Three days later, on February 3, 2017, Dr. Finger commenced this proceeding against MedCare, CCG, Harry Jacobson, Steven Johnson and Douglas Koppang. Dr. Finger entered into a thirty-day transitional employment contract with LHH during its liquidation. Dr. Finger also acquired the physical assets utilized for his practice from the bankrupt estate. Three weeks later, he entered into an employment agreement with Slidell Memorial Hospital.

Dr. Finger made as much or money with Slidell Memorial than he earned with LHH.  Dr. Finger's expert admitted during his deposition that since Dr. Finger made more money at LHH and Slidell Memorial Hospital, he is in a better economic position and therefore has suffered no loss.  Defendants' expert likewise determined that Dr. Finger did not suffer any damages since, after the alleged acts by Defendants, Dr. Finger was and is currently in an economic position equivalent to or better than the position he had prior to the alleged acts by Defendants.

On June 29, 2017, LHH filed a "Chapter 11 Joint Plan of Liquidation" [Bkr. Doc. 416] in the Bankruptcy Case, as amended on August 1, 2017 [Bkr. Doc. 470] (hereinafter, the "**Plan**"). The Plan provided the terms and conditions for resolution of the outstanding claims against the Debtors, including a release of claims by former employees of LHH, such as Dr. Finger, against the Employee Released Parties. The Employee Released Parties, as defined in Section 1.36 of the Plan, include the Defendants in this case.

Section 6.1 of the Debtors' Plan outlines a "Compromise and Settlement with Employees" of the Debtors, which "resolve[s] all Employee Claims against the Debtors and the Employee Released Parties" by "compromise and settlement of each and every Claim that an Employee may have against the Debtors and the Employee Released Parties in exchange for the payment to the Employee of the Employee Settlement Amount."  The express purpose of the Employee Settlement is "to avoid what is anticipated to be expensive and protracted litigation associated with the Employee Claims."

In connection with the Employee Settlement, all Employees received an "Employee Ballot" detailing the amount that the Employee was entitled to under the Employee Settlement and the terms of the Employee Settlement.  As an Employee under the Plan, Dr. Finger received a copy of the Plan, the Disclosure Statement, and the Ballot, together with a pre-addressed return

envelope, on or about August 11, 2017.  Dr. Finger's Ballot set forth the terms of the Employee

Settlement, along with his "Employee Claim" amount.  Importantly, had Dr. Finger wanted to opt

out of the release provided for under the Employee Settlement, he was given the opportunity to do

so.  Dr. Finger did not opt out of the Employee Settlement.  Instead, Dr. Finger received a check

for his portion of the Employee Settlement, which he cashed, thereby consummating the release

of the Defendants as provided for in the Plan.  In return for the Employee Settlement Amount paid

to Dr. Finger, pursuant to the Plan, Dr. Finger released all Claims against Debtors, MedCare, CCG

and each of their respective "shareholders, partners, members, agents, advisors, officers, directors,

insurers and employees," which includes the individual defendants named herein.  This release is

*res judicata.*

**Uncontested Material Facts**

       7.   <u>Listing of all uncontested material facts.</u>

1.  In 2015, Dr. Finger was an orthopedic surgeon in a profitable private practice.

2.  Dr. Finger entered into that certain Physician Employment Agreement (the "Employment Agreement") with LMCHH PCP, LLC ("LHH") effective as of January 29, 2016.

3.  The only parties to the Employment Agreement are Simon Finger, M.D. and LMCHH PCP, LLC.

4.  On February 3, 2017, Dr. Finger commenced this proceeding against MedCare Investment Corporation, CCG, Harry Jacobson, Steven Johnson and Douglas Koppang. See Complaint (R. Doc. 1-2).

5.  On July 21, 2015, Johnson met with Dr. Finger to discuss opportunities for Dr. Finger and his partners at LHH.

6.  Dr. Finger was recruited by LHH.

7.  On January 31, 2016, Dr. Finger had a phone conversation with Dr. Jacobson regarding LHH.

8.  Dr. Finger executed a seven-year employment contract, the Employment Agreement, with LHH on February 1, 2016.

9.  During his recruitment, Dr. Finger was represented by attorneys, Jeffrey Oakes, Chris Beary and Conrad Meyer, and by Mark Bohnet, CPA, in connection with his negotiation and execution of the Employment Agreement.

10. LHH filed for bankruptcy on January 30, 2017.

11. Dr. Finger owned 2.95 membership units in Lake Surgical Hospital Slidell, LLC ("Lake") prior to his execution of the Employment Agreement.

12. The formula for determining the buyout of membership in the Lake is set forth in the Lake Operating Agreement, to which Dr. Finger was a party.

13. Dr. Finger was represented by counsel in connection with Lake's redemption of Dr. Finger's membership interests in Lake.

14. Effective February 22, 2017, Simon Finger, acting on behalf of the Finger, Fong, and Gosey Group Practice, LLC dba Elite Orthopaedic Specialists, entered into that certain "Purchase Agreement" with Louisiana Medical Center and Heart Hospital, LLC and LMCHH PCP, LLC whereby the clinic repurchased its assets from the debtors.

15. On June 29, 2017, LHH filed a "Chapter 11 Joint Plan of Liquidation" [Bkr. Doc. 416] in the Bankruptcy Case, as amended on August 1, 2017 [Bkr. Doc. 470] (hereinafter, the "Plan").

16. The Plan provided the terms and conditions for resolution of the outstanding claims against the Debtors, including a release of claims by former employees of LHH, such as Dr. Finger,

against the Employee Released Parties.

17. Dr. Finger received a check for his portion of the Employee Settlement, which he cashed.

**Contested Issues of Fact**

       8. <u>List of contested issues of fact.</u>

1. Whether MedCare Investment Corporation has any corporate, financial or legal relationships with CCG or LHH.

2. Whether LHH was not profitable in 2012, 2013, 2014 or 2015.

3. Whether CCG began making Working Capital loans to LHH pursuant to a Demand Note on December 12, 2011.

4. Whether, from December 12, 2011 through June 23, 2015, CCG disbursed a total of $68,669,441.80 in loan proceeds for the working capital of LHH under the Demand Note.

5. Whether, on July 16, 2015, CCG made an additional Working Capital loan to LHH of $1,500,000.00.

6. Whther, by September 2015, CCG had loaned over $50 million into LHH.

7. Whether, in late 2015, CCG sold BHH to a syndicate of physicians, leaving CCG with only one hospital under its management.

8. Whether Koppang represented to Dr. Finger in January 2016 that LHH was trending towards profitability.

9. Whether Koppang showed Dr. Finger only the "hospital" losses and not the "physician group" losses in January 2016 to make LHH's losses appear less severe.

10. Whether MedCare ever indicated to members of CCG that it intended to stop funding LHH in 2016.

11. Whether CCG and/or MedCare were attempting to sell LHH in 2015.

12. From August 5, 2015 through December 23, 2015, CCG loaned an additional $8,500,000.00 for working capital to LHH under the Demand Note.

13.  On January 13, 2016, CCG loaned an additional $1,000,000.00 for working capital to LHH under the Demand Note.

14. On January 26, 2016, the Demand Note between CCG and LHH was amended to increase the principal amount evidenced by the Note to $100,000,000.00.

15. On January 26, 2016, less than a week before Dr. Finger executed his Employment Agreement with LHH, CCG loaned an additional $600,000.00 for working capital to LHHWhether Koppang and Johnson told Dr. Finger in January 2016 that MedCare had never walked away from a deal, and if so, whether that statement is true or if false, known by them to be false.

16. Whether Dr. Jacobson told Dr. Finger on January 31, 2016, that MedCare was committed to funding LHH through the life of his contract, and if so, whether that statement was true at the time.

17. From February 18, 2016 through September 13, 2016, CCG loaned $16,460,000 for working capital to LHH pursuant to the Demand Note.

18. Whether Dr. Finger's recruitment was done for the purpose of boosting LHH's revenues in order to make it more attractive for a sale.

19. Whether MedCare knew in 2015 that if they were unable to sell LHH, that it would be bankrupted.

20. Whether MedCare and CCG knew in 2015, after the sale of BHH, that the staff of CCG was going to be terminated in 2016.

21. Whether MedCare or CCG or Dr. Finger could undo Dr. Finger's contract before May 1, 2016, after he signed the LHH employment contract, but before he started working for LHH.

22. Whether Dr. Finger relied on the alleged representations and omissions of Dr. Jacobson, Koppang, and Stevenson, when signing his LHH contract.

23. Whether the LHH contract was intended to satisfy, in part, a non-pecuniary interest of Dr. Finger.

24. The causation, extent and amount, if any, of Dr. Finger's economic and non-economic damages.

25. What Koppang knew, believed, and communicated to Dr. Finger before February 1, 2016, about the future support of the Hospital.

26. What Johnson knew, believed, and communicated to Dr. Finger before February 1, 2016, about the future support of the Hospital.

27. What Jacobson knew, believed, and communicated to Dr. Finger before February 1, 2016, about the future support of the Hospital.

28. Whether and to what extent Dr. Finger had knowledge of the financial state of the Hospital prior to executing the Employment Agreement.

29. Whether Dr. Finger suffered damages as a result of the alleged misrepresentations made by Koppang, Johnson and Jacobson.

30. Whether or not Dr. Finger was and is currently in an economic position equivalent to or better than the position he had prior to any of the events alleged in his Petition for Damages.

31. Whether Dr. Finger failed to mitigate his alleged damages.

32. Whether Dr. Finger knew beforehand that the execution of the Employment Agreement violated the non-compete provisions of the Lake operating agreement.

33. Whether Dr. Finger divested his interest in Lake for the price of $100, which was calculated pursuant to the Lake Operating Agreement.

34. Whether Dr. Finger did not ask or otherwise negotiate with Lake to be released from the non-compete provisions of its operating agreement.

35. Whether there is any causal connection between the events alleged in Dr. Finger's Petition and the diminution in value of his interest in Lake Surgical Hospital Slidell, LLC.

36. Whether the price paid for Dr. Finger's interest in Lake Surgical Hospital Slidell, LLC is relevant to the damages alleged herein.

37. Whether Dr. Finger received value for his membership in Lake in accordance with the Lake Operating Agreement.

38. Whether Plaintiff is able to satisfy his burden to meet the elements of his various causes of action that include fraud, intentional misrepresentation, and/or detrimental reliance as a matter of law.

39. Whether, at all relevant times, Douglas Koppang and Steven Johnson were employees of CCG, and their actions related to Dr. Finger were performed in their capacity as employees of CCG.

40. Whether, at all relevant times, Dr. Harry Jacobson was the Chairman of MedCare Investment Corporation, and his actions related to Dr. Finger were performed in his capacity as an employee of MedCare Investment Corporation.

41. On September 30, 2011, CCG purchased a 95% interest in LHH for $1.00, plus an assumption of debt, from MedCath.

42. Whether, in 2014, LHH obtained a $10 million line of credit through MidCap, for purposes of funding operations at LHH.

43. Whether, in late 2015, after CCG sold BHH to a syndicate of physicians, the CCG staff was redundant.

44. Whether, on September 18, 2015, Warren Beck, CEO of CCG, wrote to Harry Jacobson that he has "developed a perspective that it is unlikely that CCG is here for the long term." Beck advised Jacobson that if MedCare wanted a "quick exit", it should "[h]alt most of the integrations in process…[including] Finger... Although most of these yield accretive margin there is a question here of integrity and honesty as they change their lives to join LHH. Continued recruitment would be misleading and could subject the company to lawsuits.

45. During CCG's management of LHH, Medcare, more often than not, underfunded the cash requests of CCG for LHH.

46. Whether, by September 2015, Medcare had invested over $50 million into LHH, and LHH was not making money and knew the cash-flow trend was not improving.

47. Whether in 2015, Medcare's corporate representative "did not believe [LHH] would be profitable in 2016."

48. Whether, in 2015, LHH was not hitting its financial targets, and if so, whether those targets were established by MedCare.

49. Whether Medcare's customary practice is to "build a company and eventually sell it."

50. The amounts and dates of cash infusions from CCG to LHH in 2015 and 2016.

51. Whether Dr. Finger met with Koppang and Johnson in mid-January 2016 to discuss the financial position of LHH and address Dr. Finger's concerns regarding the commitment of LHH's investors, MedCare and CCG.

52. Whether, no later than September 15, 2016, MedCare hired SOLIC, an advisory firm, to transition them out of ownership of LHH.

53. In October 2016, LHH hired Alston & Bird as its counsel.

54. The purpose for LHH hiring Alston & Bird.

55. In 2013, Dr. Finger reported self-employment earnings from his medical practice of $830,641 on his personal tax returns for the Finger, Fong and Gosey Group Practice, LLC d/b/a Elite Orthopaedic Specialists.

56. In 2014, Dr. Finger reported self-employment earnings from his medical practice of $726,686 on his personal tax returns for the Finger, Fong and Gosey Group Practice, LLC d/b/a Elite Orthopaedic Specialists.

57. In 2015, Dr. Finger reported self-employment earnings from his medical practice of $593,659 on his personal tax returns for the Finger, Fong and Gosey Group Practice, LLC d/b/a Elite Orthopaedic Specialists.

58. In 2015, Dr. Finger reported net earnings of $31,973 on his personal tax returns for Lake Surgical Hospital Slidell, LLC. In 2016, Dr. Finger's Form W-2 from the Louisiana Medical Center and Heart Hospital showed "Wages, Tips, Other Compensation" of $836,995 earned by Dr. Finger from May-December.

59. Dr. Finger entered into a Physician Employment Agreement with St. Tammany Hospital Service District No. 2 d/b/a Slidell Memorial Hospital ("SMH") on February 28, 2017 (the "SMH Agreement").

60. Per the SMH Agreement, Dr. Finger earns an annual base salary of $880,000 plus production bonuses for five years. In the last ten (10) months of 2017, Dr. Finger earned $935,417 from SMH.

61. The "Employee Released Parties," as defined in Section 1.36 of the Plan, include the Defendants in this case.

62. Section 6.1 of the Debtors' Plan outlines a "Compromise and Settlement with Employees" of the Debtors, which "resolve[s] all Employee Claims against the Debtors and the Employee Released Parties" by "compromise and settlement of each and every Claim that an Employee may have against the Debtors and the Employee Released Parties in exchange for the payment to the Employee of the Employee Settlement Amount."

63. In connection with the Employee Settlement, all Employees received an "Employee Ballot" detailing the amount that the Employee was entitled to under the Employee Settlement and the terms of the Employee Settlement.

64. As an Employee under the Plan, Dr. Finger received a copy of the Plan, the Disclosure Statement, and the Ballot, together with a pre-addressed return envelope, on or about August 11, 2017.

65. Dr. Finger's Ballot set forth the terms of the Employee Settlement, along with his "Employee Claim" amount.  Dr. Finger did not opt out of the Employee Settlement.

66.  In return for the Employee Settlement Amount paid to Dr. Finger, pursuant to the Plan, Dr. Finger released all Claims against Debtors, MedCare, CCG and each of their respective "shareholders, partners, members, agents, advisors, officers, directors, insurers and employees," which includes the individual defendants named herein.

**Contested Issues of Law**

**8.** __List of contested issues of law__:

1.      Whether the Defendants had a legal duty to supply correct information to the plaintiff regarding the financial condition of LHH, the loss of BHH, or its interests in selling LHH in 2015.

2.      Whether the Defendants breached their duty, which by omission or by affirmative misrepresentation.

3.      Whether the plaintiff suffered damages or pecuniary loss as a result of his justifiable reliance upon the omission or affirmative misrepresentations of the Defendants.

4.      Whether the representations made by Defendants to Dr. Finger were misrepresentations of material past or present facts.

5.      Whether the representations made by Defendants to Dr. Finger were made with the intent to deceive Dr. Finger.

6.      Whether Dr. Finger justifiably relied upon the misrepresentations of material facts by the Defendants.

7.      Whether Plaintiff is able to satisfy his burden to meet the elements of his various causes of action that include fraud, intentional misrepresentation, and/or detrimental reliance as a matter of law.

8.      Whether the statements allegedly made by Koppang to Finger constitute unfulfilled promises or statements as to future events for purposes of a finding of fraudulent misrepresentation.

9.      Whether the statements allegedly made by Johnson to Finger constitute unfulfilled promises or statements as to future events for purposes of a finding of fraudulent misrepresentation.

10.     Whether the statements allegedly made by Jacobson to Finger constitute unfulfilled promises or statements as to future events for purposes of a finding of fraudulent misrepresentation.

11.     Whether CCG and MedCare may be held vicariously liable for the alleged misrepresentations made by Koppang, Johnson and Jacobson as stated in Dr. Finger's Petition for Damages.

12.     Whether Louisiana Civil Code article 1998 applies to allow Dr. Finger to recover nonpecuniary damages from Defendants where the Defendants were not parties to any contract with Dr. Finger.

13.     What damages, if any, is Dr. Finger entitled to recover.

14.     Whether the release of the Defendants provided in the LHH Bankruptcy Plan is *res judicata*.

## 9.     Exhibit Lists

List and description of the exhibits that each party intends to introduce at the trial.

A.  Plaintiff Simon Finger, M.D.'s exhibit list:

| No. | Exhibit |
|---|---|
| 1 | 20150731 Somerset Valuation Report |
| 2 | 20160129 Asset Purchase Agreement |
| 3 | 20160129 Physician Employment Agreement |
| 4 | 20160822 Email Statement from Jacobson |
| 5 | 20160922 Email Between Koppang and Jacobson |
| 6 | 20160922 Email Dr. Finger |
| 7 | 20161010 Email Re Dr Finger Transition Support |
| 8 | 20161102 Email re Regulatory Lawyers |
| 9 | 20170201 Email re SMH Bankruptcy Counsel |
| 10 | 20170221 Finger SMH Employment Contract |
| 11 | 20170228 Finger On Call Coverage Agreement |
| 12 | 20170301 Finger Independent Contractor Agreement |
| 13 | 20170720 Disclosure Statement Email to Oakes |
| 14 | 20170911 Bankruptcy Ballot |

| 15 | 20171220 WARN Claim Check |
| 16 | 20180524 Cross Gates Finger Valuation Model Letter |
| 17 | 20190619 Peter Mayer Media Proposal |
| 18 | 20160212 Letter re Redemption of Lake Hospital Membership Units |
| 19 | 20170130 LHH Voluntary Chapter 11 Petition |
| 20 | 20170327 Order Authorizing Sale of Practice |
| 21 | 20170629 Disclosure Statement |
| 22 | 20170801 Amended Disclosure Statement |
| 23 | Financial Records for Elite Orthopedics (Profit and Loss Statements, Balance Sheets, Bank Statements, Tax Returns, Analysis by LHH, Productivity Data, and Reimbursement Analyses) |
| 24 | LHH Margin Analysis for Finger Gosey and Butler |
| 25 | 20150918 Email CCG/LHH |
| 26 | 20150713 Email Simon Finger Meeting |
| 27 | 20151223 Email Re. Revised Term Sheet |
| 28 | 20160129 Email Simon Finger/Elite Orthopedics |
| 29 | Text Messages from September and October 2016 (Finger, Koppang, and Jacobson) |
| 30 | 20151229 Email re Dr. Butler |
| 31 | 20151223 Emails re. Physician Benefit Overview and Financial Strength |
| 32 | 20151223 Email re. employment agreement |
| 33 | 20151009 Email LHH Projection Model |
| 34 | 20151217 Email re Revised Term Sheet |
| 35 | 20151111 Email Elite Orthopedic Update |
| 36 | 20160104 Email Finger Butler Gosey |
| 37 | 20150803 Email Cash Aug 2015 |
| 38 | 20151006 Email CCG Cash Request |
| 39 | 20151006 MC Funding Projection Update |
| 40 | 20150711 Fwd July Cash Request |
| 41 | 20151201 LHH Financial Report |
| 42 | LMCH PCP LLC Application for fees for Alston & Bird (LAEB R. Doc. 54) |
| 43 | LMCH PCP LLC Application for fees for SOLIC (LAEB R. Doc. 68) |
| 44 | Transcript of 30(b)(6) Deposition of MedCare Investment Corporation |
| 45 | Transcript of 30(b)(6) Deposition of Cardiovascular Care Group, Inc |
| 46 | Any pleadings in this case. |
| 47 | Any deposition transcript created in this case. |
| 48 | Any exhibits made necessary for rebuttal. |

B.  Defendants' Exhibit List

1. Petition for Damages filed by Dr. Simon Finger

2. Plaintiff Simon Finger's FRCP 26(a)(1) Initial Disclosures dated December 20, 2017.

3. Any other pleading, motion, or filing in the above captioned proceeding, including any exhibits attached thereto or incorporated therein.

4. CCG/LMCHH Receivable Summary – Initial Disclosures 00001-15

5. Elite Ortho Purchase Agreement effective January 29, 2016 – Initial Disclosures 00018-30

6. Physician Employment Agreement effective January 29, 2016 re Dr. Finger – Initial Disclosures 00050-68

7. Confidential Elite Orthopaedic Specialists, LLC Summary Valuation of the Assets to be Acquired dated July 31, 2015 – Initial Disclosures 00093-141

8. Somerset CPAs and Advisors Letter dated September 21, 2015 – Initial Disclosures 00142-150

9. Affidavit of Simon Finger, M.D., ¶ 5 (R. Doc. 42-1)

10. Declaration of Simon Finger dated June 10, 2019, (R. Doc. 94-8)

11. Any filings in the Bankruptcy Proceeding commenced by Louisiana Medical Center and Heart Hospital, LLC and LMCHH PCP LLC (Bankr. No. 17-10353 (jointly administered with 17-10354), including but not limited to:

12. CCG Proof of Claim and Attachments filed in Bankruptcy Case No. 17-10354 (consolidated with Case No. 17-10353) – Bates No. CCG-Finger 000001-34.

13. Order Authorizing Sale and Lease of Certain Physician Practice Assets [P-268], as well as the Purchase Agreements referenced therein, including but not limited to the Purchase Agreement dated February 22, 2017, between the Finger, Fong and Gosey Group Practice,

LLC d/b/a Elite Orthopaedic Specialists and Louisiana Medical Center and Heart Hospital, LLC and LMCHH PCP, LLC [P-227-4].

14. Plan of Liquidation (original and as amended),

15. Disclosure Statement,

16. Ballots,

17. Checks Distributed to Simon Finger.

18. Any documents produced by Slidell Memorial Hospital pursuant to the subpoena issued by Defendants, including:

    a. Dr. Finger Accounts Receivable Summary Spreadsheet

    b. Physician Compensation Work RVU Spreadsheet

    c. Simon Finger W-2 and Tax Statement for 2017, including Earnings Statements and Related Physician Compensation Documents

19. Simon Finger K-1s for Slidell Specialty Hospital, L.P. and Lake Surgical Hospital Slidell, LLC, and related documents.

20. Louisiana Heart Hospital Board Meeting Powerpoint, including February 17, 2016 Presentation.

21. Email String dated January 28, 2017 between Jeffrey Oakes, Matt Bair, and Grant Stein related to client representation.

22. Email and Email String dated February 10, 2017 to and from Grant Stein and counsel for Simon Finger, Jeffrey Oakes, related to the Bankruptcy Proceeding commenced by Louisiana Medical Center and Heart Hospital, LLC and LMCHH PCP LLC.

23. Email and Email String dated July 20, 2017 to and from Grant Stein and counsel for Simon Finger, Jeffrey Oakes, related to the Bankruptcy Proceeding commenced by Louisiana

Medical Center and Heart Hospital, LLC and LMCHH PCP LLC and the Disclosure Statement and Joint Plan of Liquidation.

24. Email communications between Slidell Memorial Hospital representatives and Simon Finger and/or Jeffrey Oakes during the bankruptcy in furtherance of Dr. Finger's employment at Slidell Memorial Hospital.

25. Agreement between LMCHH PCP, LLC and Simon Finger signed by Simon Finger on or about February 1, 2016.

26. Amendment to Physician Employment Agreement effective November 1, 2016 by and between LMCHH PCP LLC and Simon Finger.

27. Physician Employment Agreement by Slidell Memorial Hospital and Simon Finger signed on February 21, 2017, as well as any schedules or attachments thereto, as well as the Amendment to Physician Employment Agreement, Addendum "A", and the Assignment.

28. On-Call Coverage Agreement dated February 28, 2017 by and between Simon Finger and Satyr Clinical Services, Inc., as well as any Exhibits attached thereto.

29. Simon Finger Tax Returns, including all attachments and Schedule K-1s – All Years Produced by Plaintiff

30. The Finger, Fong & Gosey Group Practice, LLC Tax Returns, including all attachments and Schedule K-1s – All Years Produced by Plaintiff

31. Simon Finger Form W-2s produced by Plaintiff

32. Elite Orthopaedic Specialists Profit & Loss Statements Produced by Plaintiff

33. Slidell Specialty Hospital, L.P. Schedule K-1s and related tax information produced by Plaintiff

34. Letter dated February 5, 2016 re: Notice of Intention to Purchase Membership Units from Lake Surgical Hospital Slidell, LLC

35. Letter dated February 12, 2016 re: Election to Redeem Membership Units from Lake Surgical Hospital Slidell, LLC

36. Letter dated February 18, 2016 regarding Redemption Issue from Simon Finger's attorney, Christopher Beary to Vannessa Smith with Lake Surgical Hospital Slidell, LLC.

37. Operating Agreement of Lake Surgical Hospital Slidell, LLC and other operating agreements produced in discovery.

38. Elite Ortho and Physical Therapy Asset Lists produced by Plaintiff

39. Elite Physical Therapy Profit and Loss Statements

40. Defendants' First Set of Discovery Requests and Plaintiff's Answers to Defendants' First Set of Discovery Requests, including any exhibits attached thereto.

41. Defendants' Second Set of Discovery Requests and Plaintiff's Answers to Defendants' Second Set of Discovery Requests, including any exhibits attached thereto.

42. Steven Johnson Email dated June 18, 2015 to Warren Beck, copying Doug Koppang, re "Observations" – PROD0003784

43. Email string dated July 13, 2015 from Steve Johnson to Warren Beck and Doug Koppang, copying Steve Johnson, re "Re: Re: Simon Finger meeting." PROD0001947

44. Email dated July 15, 2015 from Daniel Sheehan to Kale Roberta to Harry Jacobson, Todd Callister, Daniel Sheehan re "Due Diligence-DCG, CCG and OIA." PROD0003882

45. Email dated July 22, 2015 from Steve Johnson to Doug Koppang and Cheryl Baham re "Re: Re: Simon finger." PROD0001959

46. Email dated July 23, 2015 from Cheryl Baham to Steve Johnson and Doug Koppang re "Simon Finger MD/Elite Orthopedic NDA."  PROD0001972

47. Email dated September 18, 2015 from Warren Beck to Harry Jacobson entitled "CCG/LHH." – PROD0002077.

48. Email dated October 5, 2015 from Steve Johnson to Gavin McNamara, Doug Koppang, and Steve Johnson re "Elite Orthopaedic Specialists – PROD0000350

49. Email dated October 6, 2015 from Doug Koppang to Simon Finger, and Steve Johnson re "Elite Orthopedic Specialists." PROD0000334

50. Email string dated October 7, 2015 from Todd Callister to Harry Jacobson, Tim Lyles, copying Dave Keith and Kim De Los re "Fwd: CCG Cash Request." PROD0002092

51. Email string dated October 9, 2015 from Steve Johnson to Warren Beck, bcc Steve Johnson, re "FW: FW: Follow Up Items to the LHH Projection Model." PROD0001230

52. Email dated October 13, 2015 from Steve Johnson to Roy Wright, Warren Beck, and Doug Koppang re "DRAFT term Sheet Elite Orthopedic Specialists (Finger, Gosey & Butler)." PROD0000168

53. Email string dated October 21, 2015 from Gavin McNamara to Steve Johnson, copying Doug Koppang, re "RE: RE: ELITE Orthopedics." PROD0001788

54. Email dated October 26, 2015 from Steve Johnson to Simon Finger and Doug Koppang re "Proposed Term Sheets." (and attachments) PROD0001646

55. Email dated October 27, 2015 from Simon Finger to Steve Johnson re: "Re: Re: Proposed Term Sheets." PROD0001886

56. Email dated November 9, 2015 from Steven Johnson to Simon Finger, copying Doug Koppang, re "FW: FW: Urgent EA Request – Simon Finger." PROD0001408

57. Email dated November 11, 2015 from Steven Johnson to Warren Beck, Roy Wright, copying Doug Koppang and Cheryl Baham, re "Elite Orthopedic Update." PROD0000353

58. Email dated December 7, 2015 from Doug Koppang to Simon Finger and Steve Johnson re "FW: FW: Dr. Finger/Elite." PROD0000835

59. Email dated December 18, 2015 from Steve Johnson to Warren Beck re "FW: FW: Revised Term Sheet." PROD0001385

60. Email string dated December 22, 2015 from Doug Koppang to Simon Finger, copying Steve Johnson, re "Re: Re: USPI's non-compete." PROD0001963

61. Email string dated December 23, 2015 from Steve Johnson to Todd Callister, Doug Koppant, Warren Beck and Steve Johnson re "FW: FW: Integrations." PROD0001241

62. Email string dated December 23, 2015 from Steve Johnson to James Gosey, Doug Koppang, and Steve Johnson re "FW: FW: employment agreement." PROD0001172

63. Email string dated December 23, 2015 from Doug Koppang to James Butler and Steve Johnson re "Re: Re: Revised Term Sheet." PROD0001903

64. Email dated December 23, 2015 Doug Koppang to Simon Finger and Steve Johnson re "Asset Valuation." PROD0000027

65. Email dated December 28, 2015 from Doug Koppang to Steve Johnson re "Fwd: Fwd: Heart Hospital." PROD0000515

66. Email string dated January 5, 2016 from Warren Beck to Doug Koppang, Steve Johnson, and Roy Wright re "RE: RE: Butler Employment Agreement."   PROD0001747

67. Email string dated January 5, 2016 from Doug Koppang to Gavin McNamara, copying Steve Johnson, re "Re: Re: Elite Orthopedic Services." PROD0001775

68. Doug Koppang Email dated January 8, 2016 to Simon Finger re "Crescent City Surgical Centre." PROD0002185

69. Email dated January 14, 2016 from Doug Koppang to Simon Finger and Steve Johnson re "Documents." PROD0000084

70. Email string dated January 14, 2015 from Doug Koppang to Simon Finger and Steve Johnson re "Fwd: Fwd: Dr. Finger." PROD0000456

71. Email dated January 19, 2016 from Doug Koppang to Simon Finger and Steve Johnson re "FW: FW: Dr. Finger." PROD0000776

72. Email dated January 20, 2016 from Simon Finger to Doug Koppang re "Fwd: Documents." PROD0003891

73. Email dated January 22, 2016 from Doug Koppang to Simon Finger and Steve Johnson re "FW: FW: Dr. Finger." PROD0000644

74. Email dated January 28, 2016 from Doug Koppang to Simon Finger and Steve Johnson re "FW: FW: Elite Orthopaedics." PROD0001064 * "atty email?"

75. Email string dated January 29, 2016 from Doug Koppang to Simon Finger re "Fwd: LHH 2016 Budget Template" and attached 2016 Budget Template PROD0002421

76. Email from Joel Porter dated January 29, 2016 to Chris Beary – PROD0003994-3995.

77. Email string dated January 29, 2016 from Doug Koppang to Warren Beck, Steve Johnson, Cheryl Baham, Roy Wright, and Carmen Bentley re "Fwd: Fwd: Dr. Simon Finger/Elite Orthopaedic." PROD0000509

78. Email dated January 31, 2016 from Steve Johnson to Warren Beck, Doug Koppang, and Roy Wright re "Elite Orthopedic Associates Timeline." PROD0000348

79. Email dated February 1, 2016 from Steve Johnson to Doug Koppang, copying Warren Beck with a bcc to Steve Johnson, re "Re: Re: Dr. Finger." PROD0001749

80. Email string dated February 1, 2016 from Rob Stillwell to Harry Jacobson re "FW: Ortho Closing." PROD0002172

81. Email dated February 2, 2016 from Steve Johnson to Warren Beck re "Elite Announcement." PROD0000170

82. Email dated February 12, 2016 from Rose Delaney re "Louisiana Heart Hospital Governing Board Agenda" and attachments. PROD0001447

83. Text message and/or email dated February 10, 2016 to Steve Johnson and other unknown recipients re talk with Miller.

84. All calendar entries and/or meeting requests produced by Defendants.

85. Email string dated August 22, 2016 from Doug Koppang to Simon Finger re "FW: Message from Harry Jacobson." PROD0003582

86. Email dated September 21, 2016 from Warren Beck to Harry Jacobson re "Slidell MOB."

87. Email String dated September 22, 2016 from Harry Jacobson to Doug Koppang, copying Warren Beck and Tim Lyles, re "Re: Dr. Finger." PROD0003670

88. Email string dated October 5, 2016 from Doug Koppang to Linda Dixon "Re: Dr. Finger." PROD0003667

89. Email dated October 6, 2016 from Doug Koppang to Steve Johnson re "Re: Bruce Murphy visit." PROD0003653

90. Email string dated October 10, 2016 from Doug Koppang to Natalie Hunter re "Re: Dr. Finger Transition Support Agreement Proposal." PROD0003657

91. Email dated October 21, 2015

92. Email dated November 2, 2016 from Jeffrey Oakes to Matt Bair re "Conference Call."

93. Email string dated December 2, 2016 from Doug Koppang to Harry Jacobson entitled "Re:" discussing call with Dr. Finger. PROD0003731

94. Letter dated January 24, 2017 from Jeffrey Oakes to Matt Bair re "Re: Simon Finger."

95. Email dated January 27, 2016 forwarding email from Simon Finger to Doug Koppang re Crescent City Surgical letter dated January 27, 2016.

96. Email string dated February 1, 2017 between Jeffrey Oakes and Gilbert Ganucheau re "RE: Simon Finger."

97. Email string dated February 2, 2016 between Joel Porter and Conrad Meyer re "Re: Revision to Indemnification Agreement."

98. Email string dated February 17, 2017 between Jeffrey Oakes and Gilbert Ganucheau, along with Bill Davis and Jana Lay, re "RE: Finger" and Employment Agreement.

99. Email dated February 14, 2017 from Dawnmarie Matlock and Jeffrey Oakes re "Draft agreements for Simon Finger, M.D."

100. Any attachment(s) to emails identified herein.

101. Any documents discussed and/or offered as an exhibit to any deposition taken in this matter.

102. Any document or email not identified herein but produced in discovery by either party or any third-party – whether the production was before this filing or after.

103. Any document provided to, relied upon, referred to, or reviewed by Plaintiff's expert.

104. Any document provided to, relied upon, referred to, or reviewed by Defendants' expert.

105. Any document requested by Defendants yet to be produced in discovery.

106. Any exhibit necessary for impeachment and/or rebuttal purposes.

107. Any exhibit listed and/or utilized by any other party to this litigation.

108. All depositions taken in this litigation and exhibits attached thereto.

109. Any pleadings filed in this matter and all exhibits attached thereto.

**Anticipated Deposition Testimony**

15. Deposition testimony that each party intends to offer into evidence at trial:

A. Plaintiff, Simon Finger, M.D.:

B. Defendants:

Defendants have recently been informed that Steve Johnson had knee replacement surgery and may not be able to attend trial. Accordingly, Defendants may need to present the deposition testimony of Steve Johnson.

**Description of Demonstrative Evidence**

16. List and brief description of any charts, graphs, models, schematic diagrams, and similar objects which, although not to be offered in evidence, respective counsel intend to use in opening statements or closing arguments:

A. Plaintiff, Simon Finger, M.D.:

1. Organizational chart of MedCare, CCG, CCG Louisiana, and LHH.

2. Poster boards of certain exhibits, including but not limited to Exhibits 25, 39, 41, and 7.

3. Poster boards of certain charts in plaintiff's expert report.

B. Defendants:

1. Poster boards of certain exhibits, including but not limited to excerpts from CCG's Proof of Claim in the LHH bankruptcy and the September 2015 Warren Beck email.

2. Poster boards of certain charts from the expert report of Ralph Stephens, CPA.

**Witness Lists**

17. List of witnesses for all parties, including the names, addresses, and statement of the general subject matter of their testimony.

A. Plaintiff, Simon Finger, M.D.: Dr. Finger intends to call the following witnesses at trial

1. Simon Finger, M.D. (fact witness)

4. Harry R. Jacobson, M.D. (fact witness)

5. Douglas J. Koppang, Jr. (fact witness)

6. Warren Beck (fact witness)

7. Steven T. Johnson (fact witness)

8. Representative(s) of MedCare Investment Corporation (fact witness)

9. Representative(s) of  Cardiovascular Care Group, Inc. (fact witness)

10. Peter Mayer (Peter A. Mayer Advertising) (fact witness)

11. Vincent Cheshire (Manager, Cross Gates Physical Therapy)

12. Wilson A. LaGraize, Jr., CPA/CFF (Kushner LaGraize, LLC) (expert witness)

2. Dr. James Gosey (fact witness)

3. Dr. James Butler (fact witness)

13. Don Barbo

14. Steve Diagostino

15. Dr. Brian Galofaro

16. Mark Bonet, CPA

17. Any witness made necessary for rebuttal.

18. Any witness identified by any other party in this case.

B. Defendants intend to call the following witnesses at trial:

1. Simon Finger, M.D. (fact witness)

2. Harry R. Jacobson, M.D. (fact witness)

3. Steven T. Johnson (fact witness)

    4.  Douglas L. Koppang, Jr. (fact witness)

    5.  Warren Beck (fact witness)

    6.  Tim Lyles (fact witness)

    7.  Ralph Stephens (expert witness)

    8.  Any witness required for impeachment purposes

    9.  Any witness required for rebuttal purposes

    10. Any witness included on Dr. Simon Finger's witness list and/or listed, called

        and/or utilized by any party to this litigation.

    11. Any witness required to authenticate any exhibit.

    12. Any witness deposed in this litigation.

    13. Any witness identified through discovery.

**Jury Case**

    18. This is a jury case. The jury trial is applicable to all issues.  Proposed jury instructions, special jury interrogatories, and voir dire shall be electronically filed with the Court not later than **five** working days prior to the trial date."  Trial memorandum will not be filed unless the Court orders otherwise.

**Liability and Damages to be Tried Together**

    19. The issue of liability will not be tried separately from that of quantum.

**Other Matters**

    20. Other matters that might expedite a disposition of the case: The parties have not identified any additional matters that might expedite a disposition.

**Trial Date**

    21. Trial shall commence on Monday, February 3, 2020, at 8:30 a.m. and is estimated to take at most 4 trial days.

**Statement of Conference**

    22. This pre-trial order has been formulated after conference at which counsel for the

respective parties have appeared in person. Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing. Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

**Settlement Issues**

23. Possibility of settlement of this case was considered.

New Orleans, Louisiana

January 8, 2020

Respectfully submitted,

*/s/ Daniel A. Meyer*
Joseph M. Bruno (Bar No. 3604)
Daniel A. Meyer (Bar No. 33278)
BRUNO & BRUNO, L.L.P.
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 581-1493

*Counsel for Plaintiff Simon Finger, M.D..*

Respectfully submitted,

TAYLOR, PORTER, BROOKS & PHILLIPS L.L.P.

By**:/s/ Brett P. Furr**
Brett P. Furr (#17572)
Thomas R. Peak (#14300)
Jonathan A. Moore (#34686)
450 Laurel Street, 8th Floor (70801)
P.O. Box 2471
Baton Rouge, LA 70821
Phone: (225) 387-3221
Fax: (225) 346-8049
Brett.furr@taylorporter.com
Tom.peak@taylorporter.com
Jonathan.moore@taylorporter.com
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on January 9, 2020 I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of the electronic filing to all counsel of record.

_/s/ Daniel A. Meyer_